COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


NOS.   **2-07-375-CR**
**2-07-376-CR**

RICHARD MORGAN                                                                APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.    Introduction

In four points, Appellant Richard Morgan makes a confrontation clause challenge under both the United States and Texas Constitutions to evidence excluded under Texas Rule of Evidence 412 (the "rape shield law"). He also challenges the legal and factual sufficiency of evidence to support his

---

[1] *See* Tex. R. App. P. 47.4.

conviction for aggravated sexual assault of a child younger than fourteen years of age. We affirm.

## II. Factual and procedural history

A grand jury indicted Appellant for two counts of indecency with a child and five counts of aggravated sexual assault of a child. The complainant is K.W., who was thirteen years old at the time of the alleged offenses. Appellant pleaded not guilty, and the case was tried to a jury.

Arlington Police Officer Mary Almy, assigned to the juvenile unit, testified that she received initial information about K.W. on December 11, 2006, that K.W. was thirteen years old, and that she was to be interviewed the next day, December 12. A CPS investigator interviewed K.W. on December 12; Officer Almy observed the interview from a monitor hooked to a two-way closed circuit television. Police had a description of a suspect by that time, a picture of Appellant provided by K.W.'s grandmother, and Appellant's last name. In the interview, K.W. denied any type of sexual contact with Appellant to the CPS investigator. K.W. also denied any sexual conduct with Appellant to Officer Almy and other police officers.

At a second interview with the same CPS investigator the following day, Officer Almy observed that K.W. admitted to engaging in sexual conduct with the suspect, who by then had been identified as Appellant. The officers

2

referred K.W. to Cook Children's Medical Center for a CARE team examination. Crystal Utley, a former college-level pediatric nursing teacher and member of the Cook Children's CARE team, performed the exam. She testified that K.W. provided a history of recent sexual activity involving vaginal, anal, and oral intercourse. Utley's visual exam was consistent with the sexual activity described by K.W. She found a healed transection of the hymen, meaning it was a complete tear all the way to the base. But she stated that it was not possible to date the tear since healing occurs quickly, and the tear could have occurred up to a year before the exam. She found no evidence of trauma of the anus or vagina. But she explained that an anal exam may be normal even after penetration.

K.W. testified that she met Appellant in the fall of 2006 while living with her grandmother in an Arlington condominium. Appellant, a maintenance worker at the complex, had seen K.W. around the complex and initiated conversation with K.W. by asking for her name. K.W. stated that Appellant later left a note on the passenger door of her family's truck, asking for her phone number; she wrote her number down and gave it to Appellant while he waited outside. K.W. testified that she talked to him that evening and revealed her age to Appellant and his nephew P.J. during the conversation. K.W.

3

testified that Appellant responded that "age didn't matter and that he knew [she] was 13 and it was okay."

K.W. testified that she and Appellant first arranged to see each other when K.W. was spending the night at a friend's apartment. K.W. gave Appellant directions to her friend's apartment, told the friend she was meeting her brother, and walked over to Appellant's truck, which by then was parked inside the apartment complex. K.W. stated that the two kissed inside the truck and that Appellant touched her breasts with his hands and mouth. K.W. testified that he "might have touched [her] vagina" but it was "over [her] pants." She testified this incident lasted about thirty minutes. She stated that "kissing and touching" occurred in Appellant's maroon car multiple times in parking areas around the condominium complex.

K.W. testified that the next meeting between K.W. and Appellant occurred when Appellant picked K.W. up again in the maroon car and drove off the condominium complex to an apartment complex. K.W. testified that Appellant asked her if she "wanted to get in the back seat" and she said "yes." K.W. stated that she took off her clothes, they had sex, i.e., vaginal intercourse, and Appellant performed oral sex on her.

K.W. related details of her next encounter with Appellant at a motel in Arlington with pink doors and palm trees on the signs. K.W. recalled that it

4

was Appellant's idea to go there. The two had vaginal intercourse at the motel while pornography, paid for by Appellant, played on the television. For their next encounter, K.W. testified that Appellant picked her up at her junior high school at 9:00 a.m. and drove her to a yellow house in Fort Worth, where he said he lived with his girlfriend. K.W. described the dogs that were in the house. While there, Appellant and K.W. had vaginal intercourse, and each performed oral sex on the other. K.W. testified that Appellant had previously given her a pornographic videotape depicting fellatio in order to teach K.W. to perform it. K.W. also testified that anal intercourse occurred while they were at this house and that it was painful for her. K.W. stated that she had to crawl out the window when others arrived at the house and had to jump over a chainlink fence. Appellant allegedly helped her over the fence to get to the car. K.W. testified that Appellant told her to tell people that she was "his little sister" if she were ever questioned about why they were together.

The last encounter between K.W. and Appellant occurred in December 2006, when Appellant threw something at K.W.'s window late at night and told her that he would come back and pick her up. He picked her up at around 2:00 a.m. in a black truck and suggested she bring blankets. Appellant brought his nephew P.J., and the three went to an elementary school. Appellant told P.J. to park the car while he and K.W. went over to an area near the exterior of the

5

school and engaged in vaginal intercourse on the blankets under an awning over a sidewalk.

When they returned to the condominiums, K.W. saw her grandmother outside waiting for her; Appellant let K.W. out of the car away from her condominium. K.W. testified that her grandmother was upset and crying and that she had called the police. K.W. stated that she did not tell her grandmother or the police the "truth" about any sexual conduct at that time. She told her grandmother a story that she made up—that she had been with a guy named Eric.

K.W. testified that police officers took her to the Arlington Police Department where a CPS worker named Emily Jamada interviewed her. K.W. confirmed that she told Jamada "nothing happened." K.W. did not know Appellant's first name at that time; she assumed it was "Amber" because she had seen that name tattooed on one of Appellant's arms and "Morgan" on the other. The police obtained a photograph of Appellant that her grandmother found hidden behind her dresser, as well as K.W.'s cell phone containing voicemail messages from Appellant.

K.W. stated that she later talked with her brother, who was twenty years old and "very understanding," and that she told him what had really happened with Appellant. She then told her grandmother about the sexual nature of the

6

relationship before returning to the police department to again speak with Jamada. K.W. testified that she told Jamada details about instances of sexual conduct with Appellant at that time. With Officer Almy, she viewed a photo lineup and picked out Appellant's photo.

The police had K.W. "text" Appellant, who returned her call the next day. K.W. confirmed that police recorded Appellant's conversation with her, which Appellant urged her to hide the photograph of himself that he had given her and told her to say that she had been with his nephew, P.J., if she were asked. K.W. acknowledged that Appellant was concerned about being arrested if the police found his picture. The State introduced the recording and photograph of Appellant into evidence along with photographs of the yellow house with the dogs and the chain link fence, the maroon car sitting in the driveway of the house, and photographs of Appellant's tattoos.

Appellant's sister, called by the defense, testified that she was present several months later when K.W. called Appellant's girlfriend, who put the call on speakerphone so that Appellant's sister heard both ends of the conversation. According to Appellant's sister, K.W. was crying, expressed that she was "sorry," and stated that "she was forced" to tell police that she had sex with Appellant because her grandmother was threatening to throw her out and she had nowhere else to go, that they "forced [her] into [a] confessi[on]," and that

7

she never had sex with Appellant; "it never happened." K.W. testified that she told Appellant's girlfriend she would write a letter stating that sex with Appellant never happened and that she would have been willing to lie to protect Appellant but that she never wrote the letter.

The jury found Appellant guilty of two counts of indecency with a child and five counts of aggravated sexual assault of a child. Appellant now appeals his conviction on the aggravated sexual assault counts.

### III. Right to confront and cross-examine witness under United States and Texas Constitutions

At a hearing on pre-trial matters, the State requested that K.W. be seated as a witness before the jury was brought in. When she was called to testify, K.W. was brought to the witness stand and seated prior to the jury entering the courtroom. Appellant objected that the entry and seating of K.W. outside the jury's presence, with the consequent inability of any jury member to see that she was pregnant, violated his right of confrontation under the Texas and United States Constitutions because she had not taken the stand "in a normal capacity as a witness. She has been placed on the stand prior to the jury entering the room because she's apparently pregnant." Appellant further stated

that K.W.'s pregnancy may "have a relevant impact on her credibility with the jury." The trial court overruled his objection.[2]

Appellant contends by his first two points that the trial court violated his Sixth and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, Section 10 of the Texas Constitution to confront and cross-examine K.W. because the trial court prohibited him from showing the jury that K.W. was apparently pregnant.[3] Appellant argues that he was denied his right to confront K.W. because her apparent pregnancy should not have been excluded under Texas Rule of Evidence 412 because it was relevant and probative to demonstrate "bias or motive" on her part to lie about any sexual activity between K.W. and Appellant. He also argues that the probative value of the evidence outweighed any danger of unfair prejudice.

The standard of review for an alleged violation of the constitutional right to confront a witness is abuse of discretion. *Lagrone v. State*, 942 S.W.2d

---

[2] The trial court stated on the record, at the time Appellant raised his objection and again at the end of the trial, that it had all of the State's witnesses seated before the jury was brought in, with the exception of Crystal Utley.

[3] Because Appellant has not argued that the protections in the Texas Constitution exceed or differ from the protections in the United States Constitution, we only address Appellant's arguments under the United States Constitution. *See Arnold v. State*, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 830, 115 S. Ct. 103 (1994).

9

602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917, 118 S. Ct. 305 (1997). "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); *accord Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974) (holding right to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *LaPointe v. State*, 166 S.W.3d 287, 296 n. 11 (Tex. App.—Austin 2005, pet. dism'd).

Each confrontation clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with the admission of the evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). In weighing whether evidence must be admitted under the confrontation clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Id.*

Texas Rule of Evidence 412 governs the admissibility of a complainant's prior sexual relationships with third parties in a sexual assault case. Tex. R.

10

Evid. 412. Specific instances of a victim's past sexual conduct are inadmissible unless (1) the evidence falls within one of five circumstances listed in rule 412(b)(2) and (2) the trial court finds that the probative value outweighs the danger of unfair prejudice. *Id.*; *Boyle v. State*, 820 S.W.2d 122, 148 (Tex. Crim. App. 1989) (op. on reh'g) *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899, 911 n. 13 (Tex. Crim. App. 1990). Rule 412(b) provides:

> In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
>
> > (1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;
> >
> > (2) it is evidence:
> >
> > > (A) that is necessary to rebut or explain scientific or medical evidence offered by the State;
> > >
> > > (B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;
> > >
> > > (C) that relates to the motive or bias of the alleged victim;
> > >
> > > (D) is admissible under Rule 609; or
> > >
> > > (E) that is constitutionally required to be admitted; and

(3) its probative value outweighs the danger of unfair prejudice.

Tex. R. Evid. 412(b).[4]

The court of criminal appeals has expressed the rationale of provisions such as rule 412 by stating that

> evidence of a rape victim's prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of these statutes assert that they encourage victims of sexual assault to report the crimes without fear of having their past sexual history exposed to the public.

*Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985) (quoting *Bell v. Harrison*, 670 F.2d 656, 658 (6th Circ. 1982)).

The right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Id.* at 931 (holding section 21.13 of the Texas Penal Code, the precursor to rule 412, was constitutional and did not, on its face, violate the accused's right to confrontation); *see also Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046 (1973). Moreover, the Constitution

---

[4] "Past sexual behavior" has been interpreted to include sexual behavior that occurs "before trial" but after the alleged offense. *Cuyler v. State*, 841 S.W.2d 933, 936 (Tex. App.—Austin 1992, no pet.). Rule 412 governs the admission of all evidence of extraneous sexual behavior of the complaining witness, including sexual behavior that occurred after the alleged offense. *Id*. One of the main policy reasons for rule 412 is to prevent abusive, embarrassing, and irrelevant inquiries into sexual assault victims' lives. *Id*.

requires only the introduction of otherwise relevant and admissible evidence. *See United States v. Nixon*, 418 U.S. 683, 711, 94 S. Ct. 3090, 3109 (1974).

The trial took place on October 2, 2007, which—as the State points out—was almost ten months after K.W. told authorities about the sexual encounters, meaning she was impregnated by someone else after these alleged offenses occurred. K.W.'s credibility was an issue in this case because she was the sole witness to the alleged sexual conduct by Appellant. Her testimony was contradicted by her own previous denials that any such conduct had occurred. But her pregnancy, by itself, was not an indicator of a motive or bias to lie. *See Pedro v. State*, No. 03-06-00066-CR, 2007 WL 619492, at *6 (Tex. App.—Austin Feb. 27, 2007, no pet.) (mem. op., not designated for publication) (holding"evidence indicating Y.C. had intercourse with someone other than appellant does not, by itself, tend to prove or disprove that she would fabricate sexual assault charges against the appellant").

When K.W. was on the witness stand, the jury had an unobstructed view of her face, so they could observe her demeanor and assess her credibility. *Cf. Romero v. State*,173 S.W.3d 502, 507 (Tex. Crim. App. 2005) (holding that defendant's right to confrontation was infringed when witness was allowed to testify in a disguise showing only his ears, tops of his cheeks and bridge of his

13

nose).[5]  Moreover, Appellant was not prevented from cross-examining K.W., and he did question her about her initial denials of any sexual conduct with Appellant to the first officer who questioned her, the CPS officer, other officers, her mother, her grandmother, and Appellant's girlfriend.  K.W. denied that she had told Appellant's girlfriend that there had been no sex.  She admitted initially denying any sexual conduct to the others.  Neither during cross-examination nor outside the jury's presence did Appellant inquire as to why K.W. decided to retract her denials and testify that specific sexual activity occurred.  On redirect examination by the State, K.W. stated that she had denied that anything sexual happened because she had not wanted anything bad to happen to Appellant and that she still had feelings for him, and she admitted that her grandmother had threatened to make her leave and that she has had to leave and go to live with her mother.

---

[5] The Sixth Amendment protects four aspects of confrontation:  (1) physical presence; (2) oath; (3) cross-examination; and (4) observation of demeanor by the trier of fact.  *Romero,* 173 S.W.3d at 505 (citing *Maryland v. Craig*, 497 U.S. 836, 845–50, 110 S. Ct. 3157, 3164–65 (1990) (finding sufficient assurance of reliability in a procedure allowing a child witness to testify by closed-circuit television that denied one element—physical presence—when the other three were unimpaired)).  Absent any argument by Appellant otherwise, we will assume that his contention here is that the fourth element—observation of demeanor—was implicated by the procedure followed in this case.

Any inference that might be drawn from K.W.'s apparent pregnancy is speculation. K.W. was fourteen years old at the time of trial. There is no evidence suggesting that K.W. had any motive to falsely accuse Appellant. Appellant does not suggest any logical link between her pregnancy and any motive or bias that would reflect on her credibility or cause her to falsely accuse him. In any event, any probative value could not outweigh the danger of unfair prejudice from exhibiting her post-offense pregnancy. Revealing to the jury that at a point after the alleged offenses occurred she became pregnant by someone else could only have subjected her to ridicule, embarrassment, and humiliation. *See Stephens v. State*, 978 S.W.2d 728, 735 (Tex. App.—Austin 1998, pet. ref'd) (holding allowing evidence of pregnancy of complainant when raped to show other past sexual conduct where motive for fabrication of accusations against defendant was non-existent would have contravened intent of rule 412 and subjected her to ridicule, embarrassment, and humiliation).

We hold that the trial court did not abuse its discretion by preventing the jury from viewing K.W.'s pregnancy because Appellant has not shown that her pregnancy was relevant to motive or bias and because the exclusion served to avoid prejudice to K.W. and confusion of the issues. *See id.*; *see also McGlothlin v. State*, 260 S.W.3d 124, 130–31 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding exclusion of evidence that child complainant sexually abused

15

her same-age cousins not denial of right of confrontation where there was other evidence of prior sexual conduct and evidence had slight probative value and posed danger of being overwhelmingly unfairly prejudicial); *Ladesic v. State*, No. 02-05-00444-CR, 2007 WL 2963755, at *5 (Tex. App.—Fort Worth Oct. 11, 2007, no pet.) (holding trial court's refusing cross-examination of complainant about notes related to sexual relations with other boys not denial of confrontation when court allowed other examination regarding conduct with boys and any probative value far outweighed by danger of unfair prejudice under Rule 412(b)(3)); *Herrera v. State*, No. 08-01-00152-CR, 2004 WL 321681, *5–6 (Tex. App.—El Paso Feb. 20, 2004, pet. ref'd) (mem. op., not designated for publication) (holding no abuse of discretion and no denial of confrontation by excluding diary notes of other possible sexual involvements by victim where her possible bias and motive to concoct sexual assault charge were developed by evidence of desire not to move to new city and anger based on physical abuse of mother and victim by defendant). We overrule Appellant's first and second points.

## IV.   Legal and factual sufficiency of evidence

Appellant argues in his third and fourth points that the evidence was legally and factually insufficient to prove the sexual assaults, specifically arguing that K.W.'s testimony was "ambiguous" and lacked credibility.

16

## A.    Standards of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).  Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex.

17

Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Lancon,* 253 S.W.3d at 704; *Watson,* 204 S.W.3d at 414–15, 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the

18

evidence. *Lancon,* 253 S.W.3d at 704; *Watson,* 204 S.W.3d at 414–15, 417. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); *see Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009).

**B.    Applicable law**

Under Texas Penal Code section 22.021(a), a person commits the offense of aggravated sexual assault if he intentionally or knowingly (i) causes the

penetration of the anus or sexual organ of a child by any means; (ii) causes the penetration of the mouth of a child by the sexual organ of the actor; (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; (iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or (v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and if the victim is younger than fourteen years of age. Tex. Penal Code Ann. §§ 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2008).

### C. Analysis

It was undisputed that K.W. was thirteen years old at the times of the alleged offenses. The jury heard extensive evidence from K.W. regarding four specific instances when she and Appellant engaged in sexual intercourse, including vaginal, oral, and anal intercourse. The jury also heard about the initial fondling that occurred when K.W. and Appellant first started to see one another as well as oral sex performed by both individuals. Beyond the descriptions of the sexual behavior, K.W. was also able to testify in detail about the locations of each incident of sexual intercourse and fondling; she described the maroon car, the black truck, the motel, the elementary school, and the yellow house with the chain-link fence and dogs. The trial court admitted into

20

evidence photographs taken by police of the maroon car and of the yellow house and dogs, which confirmed K.W.'s descriptions.

K.W. was also able to describe Appellant's tattoos located on the backside of both his arms, and the jury received photos of the tattoos. The jury heard testimony by the CARE team member who had conducted a sexual assault examination and had observed a transection on K.W.'s hymen. The jury received exhibits showing a note allegedly left by Appellant for K.W. and a crumpled photo of Appellant that K.W. had in her possession. The jury also heard taped phone call messages from Appellant left on K.W.'s voicemail as well as the recorded conversation between them in which Appellant told K.W. to hide his picture or she would not see him again for several years.

Considering K.W.'s highly detailed testimony, the consistent results of the CARE team exam, and the corroborating photographs and recorded conversations, we hold that a rational jury could have concluded beyond a reasonable doubt that Appellant intentionally or knowingly penetrated K.W.'s female sexual organ with his penis or caused K.W.'s female sexual organ to contact his sexual organ; caused K.W.'s female sexual organ to contact his mouth, penetrated K.W.'s anus with his penis or caused her anus to contact his sexual organ; caused her mouth to contact his sexual organ; and knew that K.W. was younger than fourteen years of age at the time. Viewing the

evidence in the light most favorable to the prosecution, we hold the evidence was legally sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We therefore overrule Appellant's third point.

Viewing all the evidence in a neutral light, we consider that K.W. initially denied to the police, the CPS investigator, and her grandmother that any sexual activity took place with Appellant. We consider Appellant's sister's testimony that K.W. had told Appellant's girlfriend she was forced to say that she had intercourse with Appellant in order to remain at her grandmother's home and that "it never happened." We also consider that K.W. admitted under cross-examination that her testimony regarding Appellant's use of a vibrator to penetrate her sexual organ was not part of her statements to police and to CPS or her outcry to her family. But K.W.'s credibility and the weight of her testimony were matters for the jury to resolve. Viewed in a neutral light, we cannot say that the evidence was so weak that the verdict was clearly wrong and manifestly unjust or that the conflicting evidence so greatly outweighed the evidence supporting the conviction that the jury's determination was manifestly unjust; thus, the evidence if factually sufficient to support the jury's verdict. *See Lancon* 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 417. We therefore overrule Appellant's fourth point.

22

## V.    Conclusion

Having overruled all four of Appellant's points, we affirm the trial court's

judgments.

PER CURIAM

PANEL: GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 14, 2009