Heath Lane **STEPHENS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–97–00415–CR.

Court of Appeals of Texas, Austin.

Oct. 22, 1998.

---

Martin Underwood, Comstock, for Appellant.

Stephen R. Lupton, District Attorney, San Angelo, Lisa M. Tanner, Assistant Attorney General, Austin, for State.

Before YEAKEL, C.J., and B.A. SMITH and ONION,* JJ.

ONION, Justice.

This is an appeal from a conviction for sexual assault committed on July 20, 1995. *See* Tex. Penal Code Ann. § 22.011(a)(1)(A) (West Supp.1998).[1] The jury found appellant Heath Lane Stephens guilty and assessed his punishment at 12 years' imprisonment.

## Points of Error

Appellant advances two points of error. First, he contends that the "prosecution of this case was conducted by a person without legal authority to do so." Second, appellant urges that the "trial court erred in excluding evidence relevant to consent by misapplying Rule 412, Texas Rules of Evidence."

## A Proper Prosecutor?

Appellant argues that the elected district attorney of the 51st Judicial District had the duty and obligation to represent the State in all criminal cases within the district but did not do so in the instant case. *See* Tex. Const. art. V, § 21; Tex.Code Crim. Proc. Ann. art. 2.01 (West Supp.1998); Tex. Gov't Code Ann. § 43.130 (West 1988). Appellant acknowledges that there is a procedure for the appointment of an attorney pro tem, but contends that the basis or grounds for replacing the district attorney as required by article 2.07 were not met. Tex.Code Crim. Proc. Ann. art. 2.07 (West 1997 & Supp. 1998). Appellant asserts that Lisa Tanner, an assistant attorney general, and the purported attorney pro tem, represented the State in the instant case without legal authority to do so. He claims that he was deprived of the right to deal with the prosecutor elected by the people.

Appellant argues that Tanner was without authority to prosecute the case because an attorney pro tem can be appointed under article 2.07(a) only when the attorney for the State is disqualified to act, is absent from the county or district, is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the State. Appellant contends that none of these requirements were met with regard to the elected district attorney. The district attorney's motion for the appointment of a "special prosecutor" was based on the assertion that the victim and her family had requested the appointment of a "special prosecutor" and that the district attorney did not oppose the request. The trial court granted the motion finding that the reasons set forth were sufficient.

■ Article 2.07(b–1) provides that an attorney for the State who is not disqualified to act may request the trial court to permit him to recuse himself in a case for good cause and upon approval by the court is disqualified. This is the procedure that was followed in the instant case. The district attorney was removed from the case and his disqualification met the requirement in article 2.07(a). Lisa Tanner took the oath as attorney pro tem and was in control and management of the case.

■ Moreover, appellant's trial counsel was aware of the trial court's action and the appointment of a "special prosecutor." At no time during the trial did appellant object to the authority of the attorney pro tem to conduct the prosecution. The failure to object waived any error. *See* Tex. R. App. P. 33.1 (former Rule 52(a)); *Stanley v. State*, 880 S.W.2d 219, 220 (Tex.App.—Fort Worth 1994, no pet.); *see also Ethington v. State*, 819 S.W.2d 854, 859–60 (Tex.Crim.App. 1991).[2] Further, in the absence of a showing

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. The current law is cited for convenience. The law applicable to the instant offense is Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3618, effective Sep-

tember 1, 1994, since amended. The statutory provisions have remained unchanged.

2. Appellant raised the issue of the attorney pro tem's authority to prosecute in his motion for new trial. After a hearing, the trial court overruled the motion. Absent an abuse of discretion, the reviewing court will not overturn a trial

to the contrary, the presumption obtains that the person who acted and was recognized by the trial court in prosecuting the case was duly authorized and qualified. *See Eppes v. State,* 10 Tex. 474, 475 (1853); *see also Cook v. State,* 146 Tex.Crim. 523, 176 S.W.2d 941, 943 (1944) (where prosecutor was at least an "officer de facto," no collateral attack on his authority was permitted).

### Distinction Between Terms

■ Because the terms "special prosecutor" and "attorney pro tem" were used interchangeably in the instant record, we call attention to the distinction between the terms. A "special prosecutor," with the consent of the district attorney, assists the district attorney in the investigation and prosecution of a particular case, but the district attorney is responsible for the prosecution, control and management of the case. *See State v. Rosenbaum,* 852 S.W.2d 525, 529 (Tex.Crim.App.1993) (Clinton, J., concurring); *Rogers v. State,* 956 S.W.2d 624, 625 n. 1 (Tex.App.—Texarkana 1997, pet. ref'd). The "special prosecutor" need' not be appointed by the trial court and is not required to take the constitutional oath of office where he acts with the permission of the district attorney. *See Rosenbaum,* 852 S.W.2d at 529 n. 2 (Clinton, J., concurring); *Lopez v. State,* 628 S.W.2d 77, 80 (Tex.Crim.App. 1982); *Reed v. State,* 503 S.W.2d 775, 776 (Tex.Crim.App.1974); *Lopez v. State,* 437 S.W.2d 268, 269 (Tex.Crim.App.1968). The utilization of a special prosecutor is not predicated upon the absence or disqualification of the elected district attorney. *See Davis v. State,* 840 S.W.2d 480, 487 (Tex.App.—Tyler 1992, pet. ref'd).

■ An "attorney pro tem" is appointed by the district court in accordance with statutory provisions. *See* Tex.Code Crim. Proc. Ann. art. 2.07 (West 1997 & Supp.1998). After taking the required constitutional oath of office, the appointee assumes the duties of the elected district attorney and in effect replaces the latter in performing germane functions of the office for purposes contemplated by the appointment. *See Rosenbaum,* 852 S.W.2d at 529 (Clinton, J., concurring); *Rogers,* 956 S.W.2d at 625 n. 1.

The term "special prosecutor" is commonly used in an expansive and often improper manner by the bench and bar when reference should be to "attorney pro tem" as contemplated by article 2.07. This confusion of terms is reflected in appellate opinions. *See, e.g., Rosenbaum,* 852 S.W.2d at 526 n. 1; *Ballard v. State,* 519 S.W.2d 426, 428 (Tex. Crim.App.1975); *State v. Broaddus,* 952 S.W.2d 598, 599 (Tex.App.—Houston [14th Dist.] 1997, pet. granted); *see also Busby v. State,* No. 1284–97, slip op. 1–3, —— S.W.2d ——, —— – —— (Tex.Crim.App. Sept. 16, 1998) (Mansfield, J., dissenting).

In the instant case, the terms were used interchangeably, but it is clear that the trial court appointed an attorney pro tem under article 2.07. We do not understand appellant to contend otherwise. In such cases, the motion for the appointment of an attorney pro tem, the order appointing such officer, and the constitutional oath should be carefully worded to distinguish between an "attorney pro tem" and a "special prosecutor." [3] The first point of error is overruled.

### Rule 412

In the second point of error, appellant contends that the "trial court erred in excluding evidence relevant to consent by misapplying rule 412, Texas Rules of Evidence." [4] He

---

court's decision on a motion for new trial. *See Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App. 1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993); *Guice v. State,* 900 S.W.2d 387, 389 (Tex.App.—Texarkana 1995, pet. ref'd). On appeal, appellant has not raised any issue that the trial court abused its discretion in overruling his motion for new trial.

3. The term "special prosecutor" first appeared in the 1965 Texas Code of Criminal Procedure when added to article 2.01 discussing the primary duties of all prosecuting attorneys "includ-

ing any special prosecutors." *Rosenbaum,* 852 S.W.2d at 529 (Clinton, J., concurring); *see* Act of May 27, 1965, 59th Leg., R.S., ch. 725, 1965 Tex. Gen. Laws 317, 324, since amended, Tex. Code Crim. Proc. Ann. art. 2.01 (West Supp. 1998) (containing same language). The Legislature may well have used the term in its broadest sense in this statute.

4. Rule 412 of the Texas Rules of Evidence provides in part:

(a) *Reputation or Opinion Evidence.* In a prosecution for sexual assault or aggravated sexual

argues that he should have been permitted to show that the unmarried 17–year–old complainant was pregnant at the time of the sexual assault. He urges that the fact of pregnancy is not reputation or opinion evidence or evidence of a specific instance of an alleged victim's past sexual behavior as contemplated by Rule 412. He argues that even if pregnancy is included within the scope of the rule under the facts of this case, the need to expose the complainant's motive to lie[5] and therefore impeach her testimony of nonconsent makes the evidence more probative than prejudicial.[6]

The history of Rule 412 and its forerunners may be found elsewhere and need not be restated here. *See, e.g., Allen v. State,* 700 S.W.2d 924, 928–32 (Tex.Crim.App.1985); *Cuyler v. State,* 841 S.W.2d 933, 936 (Tex. App.—Austin 1992, no pet.); Hulen D. Wendorf, David A. Schlueter & Robert R. Barton, *Texas Rules of Evidence,* article IV at 151–52 (3d ed.1994); 1 Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* § 412.1 at 295–97 (Texas Practice—1993).

Rule 412, like its predecessor statute, represents an explicit decision to eliminate trial practices that may have frustrated society's vital interest in the prosecution of sexual crimes. *See Allen,* 700 S.W.2d at 929–30; *Cuyler,* 841 S.W.2d at 936; *see also Draheim v. State,* 916 S.W.2d 593, 599 (Tex.App.—San Antonio 1996, pet. ref'd).

■ Rule 412 applies in prosecutions for sexual assault, aggravated sexual assault, or for attempts to commit sexual assault or aggravated sexual assault. Rule 412(a) absolutely prohibits opinion or reputation evidence of the past sexual behavior of an alleged victim in these prosecutions. Under Rule 412(b), however, evidence of specific instances of past sexual behavior may be admitted when three conditions are met. First, the procedural requirements of paragraph (c) and (d) concerning the in-camera hearing and the sealing of the record must be satisfied. Second, the proponent of the evidence must establish that the evidence of specific instances of the victim's sexual behavior fall into one of the five categories set forth in Rule 412(b)(2). Third, under Rule 412(b)(3) the probative value of the offered evidence must outweigh the danger of unfair prejudice. Even if the evidence falls within the enumerated categories of Rule 412(b)(2), the court must further find that its probative value outweighs the danger of unfair prejudice. *See Holloway v. State,* 751 S.W.2d 866, 869–70 (Tex.Crim.App.1988). Simply put, if the evidence falls within any of the exceptions itemized in Rule 412(b)(2) *and*[7] its probative value outweighs the danger of unfair prejudice, it is admissible. *See Hood v. State,* 944 S.W.2d 743, 745–47 (Tex.App.— Amarillo 1997, no pet.) (citing *Boyle v. State,* 820 S.W.2d 122, 148–49 (Tex.Crim.App.1989), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992)).

### Balancing Test

■ The function of the balancing test of Rule 412(b)(3) is generally consistent with

assault, or attempt to commit sexual assault or aggravated sexual assault, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.
  (b) Evidence of Specific Instances. In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
    (1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;
    (2) it is evidence:
      (A) that is necessary to rebut or explain scientific or medical evidence offered by the State;
      (B) of past sexual behavior with the accused and is offered by the accused upon the

issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;
      (C) that relates to the motive or bias of the alleged victim;
      (D) is admissible under Rule 609; or
      (E) that is constitutionally required to be admitted; and
    (3) its probative value outweighs the danger of unfair prejudice.

**5.** *See* Rule 412(b)(2)(C).

**6.** *See* Rule 412(b)(3).

**7.** Notice should be taken of the conjunctive "and" found in Rule 412(b).

that under Rule 403. Tex.R.Crim. Evid. 403. The tests do differ somewhat. Under Rule 403, the opponent of the evidence bears the burden of showing that the danger of unfair prejudice substantially outweighs the probative value of the evidence. Under Rule 412(b)(3) the burden falls on the proponent of the evidence, the defendant, to show that the probative value of the evidence outweighs the unfair prejudice. The general balancing test under Rule 403 weighs in favor of the admissibility of evidence, while Rule 412(b)(3) weighs against the admissibility of evidence. *See Boyle*, 820 S.W.2d at 148 n. 9.

■ In light of the underlying policies of Rule 412, it is reasonable to assume the "unfair prejudice" language therein includes prejudice to the victim, who will potentially be stigmatized if the defendant is able to introduce evidence of sexual behavior. *See generally*, Hulen D. Wendorf, David A. Schlueter & Robert R. Barton, *Texas Rules of Evidence Manual*, article IV at 153 (3d ed.1994). With this background, we turn to the facts of this case.

### Facts

Although appellant does not challenge the sufficiency of the evidence to sustain the conviction, a brief summary of the facts is pertinent to appellant's contention. J. H., the complainant, was permitted by her parents to stay at her San Angelo home with a high school girlfriend while the family vacationed in the Yellowstone National Park. Her "ground rules" included prohibitions against drinking or going to bars or having parties at the family home. During this time period, on or about July 18, 1995, J.H. "broke up" with her boyfriend, D.W. On July 19, 1995, J. H., her friend, Sydnie Hoefs and several high school friends went water skiing together. Later that day and evening at J. H.'s house, they consumed various alcoholic beverages. J.H. testified that she was drinking tequila and became intoxicated. Either she or someone in the group telephoned a "bouncer" at the City Limits Bar in San Angelo, who agreed to permit their entry into the establishment although some in the group were under age. It was "College Night" at the bar. Although intoxicated, J.H. drove Hoefs

and Jeff Corbell to the bar. D. W., J. H.'s boyfriend, related that he had come to J. H.'s home and followed the group to the bar. At the bar, Corbell, a high school friend of J.H. and others in the group, encountered appellant at the bar. Appellant was an acquaintance of Corbell's parents and Corbell knew appellant "from McCamey." Near closing time for the bar at 2:00 a.m. on July 20, 1995, plans were made for several of J. H.'s friends to go to her house. Without J. H.'s knowledge, Corbell invited appellant to join them. As J.H. was driving home, Corbell informed her of his invitation and pointed to the pickup truck following them. Beer was brought to the house by several of the individuals attending the "party." At one point, J.H. stepped outside the house with another individual and met appellant for the first time. She smoked a cigarette he offered her. About five minutes later, she left to talk to D.W. who had earlier asked her if they could "get back together." J.H. and D.W. went to her bedroom on the second floor and agreed that they would date again. As they lay on the bed, D.W. reached over to kiss J. H., but she turned over, telling him she wanted to go to sleep. D.W. left the fully-clothed J. H., turned off the light, shut the door and went home. The time was about 3:00 a.m.

J.H. was awakened some time later by someone with a hairy chest laying on top of her and pulling off her shorts and panties. Drifting in and out of consciousness, J.H. repeatedly tried to push the person off of her, told him "No" and asked him to stop, and inquired who he was. She was unable to push the man away and he had sexual intercourse with her without her consent. When she was able, she turned on the bedroom lamp and saw appellant. J.H. immediately put on clean shorts and panties and ran downstairs. She was crying and was hysterical. She screamed that she had been raped. Corbell ran to the upstairs bedroom and found appellant putting on his shirt. Corbell told appellant to leave, which he did. Sydnie Hoefs called the police.

J.H. was taken to the Shannon Medical Center where a "rape kit examination" was performed. Anne Powell, the examining nurse, observed the beginning of a bruise at

the opening of the complainant's cervix caused by a recent blunt trauma, inconsistent with consensual sex. Semen was also found by the use of a vaginal swab. Blood was later obtained from appellant. Subsequent DNA testing of the semen revealed that it was consistent with appellant being the donor of the semen. D.W. was excluded as a donor of the semen.

Appellant, a 28–year–old ranch hand at the time, admitted that he had sexual intercourse with the complainant. He related that Corbell had introduced him to J.H. at the City Limits Bar, and at Corbell's invitation he had gone to J. H.'s house with the high school and college students. There, he recalled sharing a cigarette with J.H. and talking to her for about five minutes. Later, at Corbell's suggestion, he went to J. H.'s bedroom for the purpose of having sex with her. He claimed that she agreed that he could join her in bed, that he took off his clothes and she removed her shorts and panties, and they then had consensual sexual intercourse without even having kissed. Appellant contended that J.H. never resisted his advances but accused him of rape afterwards. In rebuttal, Corbell specifically denied suggesting or sending appellant to J. H.'s bedroom. The evidence is clear that prior to the date of the offense that appellant and J.H. did not know each other.

### In Camera Hearing

During the complainant's testimony and in the absence of the jury, the trial court conducted an in-camera hearing pursuant to Rule 412(c). Appellant's counsel urged that he had learned that the complainant was pregnant at the time of the offense, later had an abortion, and had in the past used contraceptives. This showed that the complainant was sexually active, and he argued that the evidence was admissible under Rule 412(b)(2)(c) as it related to the motive or bias of the alleged victim, and that under Rule 412(b)(3) the probative value outweighed the danger of unfair prejudice. Although not raised at the time, counsel asserted that

there later would be an issue of consent in the case.

At the hearing it was elicited from the complainant that she had used contraceptives since she was 15 years old. She also revealed that during her examination at the hospital she agreed to take a "morning-after" pill, but was informed that first she had to take a pregnancy test. Shortly after that test, she was informed that she was pregnant and could not take the pill. The complainant testified that she had no idea that she was pregnant.[8] She told her parents that the father of the child "most likely" was D. W.

The initial one-witness hearing consisted of more legal argument and bench colloquy than testimony. Appellant argues that even if the complainant did not know she was pregnant she might have suspected the same and cried "rape" to conceal her sexual activities with her boyfriend and her violation of her parents' "ground rules." The trial court doubted that appellant had shown any evidence as to motive, but ruled that under any circumstances the probative value of the evidence did not outweigh the danger of unfair prejudice. The trial court denied the admission of the proposed evidence, including the fact of pregnancy, which is the only evidence that appellant now claims on appeal should have been admitted.

Later, the trial court reopened the Rule 412 hearing to permit the testimony of the examining nurse, Anne Powell. Her testimony generally corroborated the complainant's testimony at the earlier in-camera hearing including complainant's surprise as to the fact of pregnancy. After this second hearing, we do not find that appellant obtained any ruling from the trial court. At least, the trial court did not change its earlier ruling. When appellant raised the issue of consent by his trial testimony, his counsel sought no further relief from the trial court's earlier Rule 412 ruling.

■　The evidence suggesting that the complainant falsely accused appellant to protect her relationship with her boyfriend, her

---

8. There was evidence that the complainant had reported to hospital personnel that her last "period" was on June 20, 1995, and her last act of sexual intercourse was on July 13, 1995. In her testimony at the hearing, the complainant said that she was unsure as to the last date.

pregnancy, and her violations of the "ground rules" is either nonexistent or extremely thin. The complainant herself informed her parents about her pregnancy and the "most likely" father. Appellant speculates that the complainant falsely accused him because she may have suspected her pregnancy and feared that her sexual relationship with her boyfriend would be disclosed. It is clear that appellant did not demonstrate a definite and logical link between the complainant's past sexual conduct and the alleged motive and bias under Rule 412(b)(2)(C).

There is compelling evidence that complainant was veracious in her accusation against appellant. Her testimony was supported by the medical examination, the DNA evidence, and in part by appellant's own admission. The 28–year–old ranch hand had joined the group of high school and young college students at the complainant's home upon the invitation of a non-host. He had observed the condition of the 17–year–old complainant who had earlier been intoxicated and he went to her bedroom for the purpose of having sex. He claimed consent only after he entered the room.

Under any circumstances, the probative value of the evidence of pregnancy did not outweigh the danger of unfair prejudice. This is particularly true in light of the undisputed fact that appellant had sexual intercourse with the complainant, and that the evidence of the complainant's fabrication was tenuous at best. Introducing evidence of her pregnancy, clearly the result of some sexual encounter, would contravene the intent of Rule 412 and subject the victim to ridicule, embarrassment, and humiliation. The admission of this type of evidence outweighs the potential usefulness of the evidence. *Cf. Cooper v. State*, 959 S.W.2d 682, 684–85 (Tex. App.—Austin 1997, pet. ref'd). The trial court did not abuse its discretion in excluding the evidence. We reject appellant's claim under the facts of this case that evidence of pregnancy lies outside the scope of Rule 412. The second point of error is overruled.

The judgment is affirmed.