# NO. 12-08-00391-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JACKY FRANKLIN,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.*<br>*COURT* | *§* | *JUDICIAL DISTRICT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

Appellant Jacky Franklin appeals his conviction for indecency with a child. He raises five issues on appeal. We affirm.

### BACKGROUND

Appellant was indicted for indecency with a child. He pleaded not guilty, and the matter proceeded to a jury trial.

The evidence at trial showed that Appellant was involved in a romantic relationship with the mother of R.M., the victim. The three lived in an apartment in Troup, Texas, parts of which are in Smith County and parts of which are in Cherokee County. R.M.'s then twenty-six year old boyfriend lived in the apartment as well.

R.M. testified that on June 6, 2007, she went to bed at midnight. Prior to going to bed, she noticed that her mother was already asleep and that Appellant was still awake and sitting in the living room. Her bedroom was directly adjacent to her mother's bedroom. Although she characterized the room as being "pretty dark" at night, she added that one could see the moon shine through the black sheet that covered her window. R.M. testified that the lights in her room were off when she went to sleep that night.

R.M. stated that she awoke after she discovered someone touching and licking her vagina. She added that she felt a "do-rag" on the head of the person touching her. She also stated that it was common for Appellant to wear a do-rag and that at the point she felt it, she knew that her "Mama's boyfriend had molested" her. R.M. testified that after she felt the do-rag, she ran to tell her mother what had just occurred, and Appellant ran past her and jumped into her mother's bed.

According to R.M., as Appellant ran past her, he told her he was sorry and that he would give her one hundred dollars if she did not say anything. In contrast, R.M.'s mother testified that she awoke to see her daughter standing in the doorway of her bedroom screaming as Appellant stood behind her in silence. Both R.M. and her mother testified that they slept together in R.M.'s bed for the remainder of that evening while Appellant remained downstairs.

The next morning, R.M. showered and tanned at a local tanning salon. At noon, she called her sister and told her what transpired on the previous night. R.M.'s sister testified that R.M. was hysterical when she called. R.M.'s sister recounted the details of the conversation stating that R.M. described her room as dark and said that she awoke from a "dead sleep." According to R.M.'s sister, R.M. initially thought that "her boyfriend . . . had come to the house and was licking her down there." R.M. told her sister that she felt a do-rag, that she saw a "big dark figure" "jump up," and that she believed the figure to be Appellant. R.M.'s sister picked up R.M. and took her to the Troup Police Department.

Officer Daniel Dallas took statements from R.M., her sister, and her mother on the day after the incident. No tests were performed nor was any physical evidence collected. Lieutenant Frank Blake testified that since the act was oral sex, several hours had passed, and R.M. had taken a shower, medical examinations or DNA tests would be futile.

Appellant's defensive theory was that R.M. fabricated the allegations against Appellant in an effort to get him out of the apartment in retaliation for his insistence that her boyfriend contribute to the household expenses or move out. On cross examination, R.M. testified that although her boyfriend was gainfully employed during the time that he lived with her, he did not contribute any money toward the household expenses. R.M.

testified that this upset Appellant and that she and Appellant argued about her boyfriend's staying in the apartment free of charge.

After hearing all the evidence, the jury convicted Appellant of indecency with a child by contact, and the trial court sentenced him to eighteen years of imprisonment.

**VENUE**

In his first issue, Appellant asserts that the State failed to prove the offense occurred in Smith County, Texas. The State counters that Appellant failed to timely raise the issue of venue and, alternatively, that the State sufficiently established venue.

**Standard of Review and Applicable Law**

In indecency with a child cases, venue is proper in the county in which the offense was committed. *See* TEX. CODE CRIM. PROC. ANN. art. 13.18 (Vernon 2005). Venue is not an element of the offense charged. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.– Austin 2005, pet. ref'd). Thus, it need only be proved by a preponderance of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (Vernon 2005); *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003); *Fairfield*, 610 S.W.2d at 779. Unless venue was disputed in the trial court, or the record affirmatively shows the contrary, an appellate court must presume that venue was proven in the trial court. TEX. R. APP. P. 44.2(c).

A challenge to venue must be brought "while [the state] is in a position to correct the evidentiary deficiency by reopening its case" in order to be timely and avoid the effect of the presumption of proper venue. *Cunningham v. State*, 848 S.W.2d 898, 902 (Tex. App.–Corpus Christi 1993, pet. ref'd). In a criminal case, the state may attempt to reopen its case "at any time before the argument of a cause is concluded. . . ." TEX. CODE CRIM. PROC. ANN. art. 36.02 (Vernon 2007).

If venue is timely raised and thus the defendant overcomes the proper venue presumption, the state may rely on direct or circumstantial evidence in meeting its burden, and the jury may draw reasonable inferences from the evidence presented. *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983); *Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.–Tyler 2006, pet. dism'd); *Edwards v. State*, 97 S.W.3d 279, 285 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd). The evidence presented at trial is sufficient to prove venue if the jury may reasonably conclude from the evidence that the

3

offense was committed in the county alleged.  **Rippee v. State**, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964.

## Discussion

Here, the alleged offense occurred in Troup, Texas, which lies partly in Smith County and partly in Cherokee County.  Appellant's trial counsel raised the venue issue for the first time while the jury deliberated after the conclusion of the guilt-innocence phase of the trial.  Because Appellant did not challenge venue until the jury began its deliberations, the State could no longer reopen its case to provide the necessary proof of venue.  *See* **Allman v. State,** 164 S.W.3d 717, 721 (Tex. App.–Austin 2005, no pet.) ("Art. 36.02 makes it clear that the court had no discretion or authority to admit evidence after the close of argument.").  Therefore, Appellant's venue challenge was untimely, and he never overcame the presumption that venue was proper in Smith County.

Appellant's first issue is overruled.

## THE TRIAL COURT'S EXCLUSION OF EVIDENCE

In his second issue, Appellant contends that the trial court abused its discretion in excluding evidence, under Texas Rule of Evidence 412, related to R.M.'s sexual relationship with her boyfriend who lived at the residence where the events at issue took place.

## Standard of Review and Applicable Law

We review a trial court's decision to exclude evidence under an abuse of discretion standard.  **Mozon v. State**, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).  An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement.  **Gonzalez v. State**, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003).  Reputation or opinion evidence of the past sexual behavior of the alleged victim is inadmissible in a prosecution for certain crimes.  *See* TEX. R. EVID. 412(a).  This rule does not apply to indecency with a child cases.  **Reyna v. State**, 168 S.W.3d 173, 175 (Tex. Crim. App. 2005) (Rule 412 "does not on its face apply to a case of indecency with a child.").[1]  Because rule 412 does not apply to indecency with a child

---

[1] Former rule of criminal evidence 412(e) provided in part that "[t]his rule does not limit the right of the accused to produce evidence of promiscuous sexual conduct of a child 14 years old or older as a defense to sexual assault, aggravated sexual assault, [or] *indecency with a child*. . . ." TEX. R. CRIM. EVID. 412(e) (disapproved by Act of May 29, 1993, 73rd Leg. R.S., ch. 900, § 1.17, 1993 Tex. Gen. Laws 3705

cases, we must review the admissibility of such evidence under other rules of evidence. *See **Hammer v. State***, 296 S.W.3d 555, 563-68 (Tex. Crim. App. 2009); ***Thomas v. State***, 137 S.W.3d 792, 795 (Tex. App.–Waco 2004, no pet.)  We start with the proposition in rule 608(b) that specific instances of conduct cannot generally be inquired into for the purpose of attacking or supporting a witness's credibility.  TEX. R. EVID. 608(b). However, that same evidence may be admissible under rule 404(b), if offered to prove motive, opportunity, intent, or any of the other facts enumerated in the rule.  *See* TEX. R. EVID. 404(b); ***Hammer***, 296 S.W.3d at 565; ***Thomas,*** 137 S.W.3d at 795.  The evidence may also be admissible to demonstrate bias or interest on the part of the witness.  TEX. R. EVID. 613(b); ***Hammer***, 296 S.W.3d at 567.   Evidence offered under rule 404(b) is always subject to the rule 403 balancing test. ***Thomas***, 137 S.W.3d at 795.

A trial court, when undertaking a rule 403 analysis, must balance 1) the inherent probative force of the proffered item of evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issues, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  Of course, these factors may well blend together in practice. ***Gigliobianco v. State***, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The function of the balancing test of rule 403 is generally consistent with that under rule 412.  *See **Stephens v. State***, 978 S.W.2d 728, 732-33 (Tex. App.–Austin 1998, pet. ref'd).  However, there are some differences in the tests.   Under rule 403, the opponent of the evidence bears the burden of showing that the danger of unfair prejudice substantially outweighs the probative value of the evidence.  ***Id.***  Under rule 412, the burden falls on the proponent of the evidence to show that the probative value of the evidence outweighs the unfair prejudice.  ***Id.***  The general balancing test under rule 403 weighs in favor of the admissibility of evidence, while the balancing test under rule 412 weighs against the admissibility of evidence.  ***Id.***

**Discussion**

---

("Under the terms of Section 22.109(b), Government Code, Rule 412(e), Texas Rules of Criminal Evidence, is disapproved." )).  The rule no longer mentions indecency with a child anywhere in its text.

R.M.'s boyfriend lived with R.M., her mother, and Appellant. Her boyfriend was twenty-six years old at the time, and R.M. was sixteen years old. Although R.M.'s boyfriend was gainfully employed, he did not contribute to the payment of household expenses. This created tension between Appellant, R.M., and her boyfriend. Appellant and R.M. frequently argued over her boyfriend's continued residence in the apartment.

In addition to the foregoing evidence, Appellant sought to present evidence that R.M. and her boyfriend shared a bedroom. He also wanted to delve into whether the two had a sexual relationship. The trial court held a rule 412 hearing and ruled that Appellant could establish that 1) R.M. had a twenty-six year old boyfriend, 2) he lived in the apartment with R.M. and Appellant, 3) R.M.'s boyfriend did not contribute to household expenses, and 4) R.M. frequently quarreled with Appellant over his treatment of her boyfriend. In addition, the trial court allowed questions about specific instances of nonsexual conduct. For example, on the date of the incident in question, Appellant and R.M. bickered over R.M's cell phone usage. The trial court recognized that Appellant offered this evidence to show R.M.'s alleged motive to fabricate. That is, this evidence was offered to show that R.M. did not like Appellant, did not like it when Appellant would "bully" her boyfriend, wanted Appellant out of the apartment, and wanted her boyfriend to stay in the apartment. However, the trial court prevented Appellant's counsel from inquiring into any sexual relationship R.M. might have with her boyfriend.[2]

Appellant complains about the trial court's exclusion of this evidence. He asserts that he should have been allowed to inquire about R.M.'s sexual relationship with her boyfriend, because only with an understanding of the depth of the relationship could the jury weigh the parties' credibility and R.M.'s motive to fabricate her testimony. The State acknowledges that the trial court erroneously applied rule 412 to determine the admissibility of the evidence. The State also asserts that the result is the same when the correct balancing test, that found in rule 403, is applied.

---

[2] The trial court stated during the hearing that it was excluding the evidence of past sexual conduct under rule 412. But the court also stated that "*under the other areas of the law*, I will let you ask those questions, at this point, because you have raised enough . . . that it would seem appropriate for the jury to hear about [R.M.'s boyfriend]; that he did live there . . . and, apparently, let the defense have a shot at trying to . . . establish to the jury that that creates some type of motive for the witness to make this accusation falsely. . . ." (emphasis added). Thus, the trial court may have indeed considered evidentiary rules other than rule 412 in conducting its analysis.

Turning to the rule 403 factors, Appellant's sexual history and relationship with her boyfriend has little or no probative value.[3] Appellant's defensive theory was that R.M. was motivated to fabricate the allegations because of Appellant's complaints to R.M. about her boyfriend's failure to contribute to household expenses. However, under the facts of this case, evidence of R.M.'s sexual relationship with her boyfriend would show only that R.M. was sexually active with an older male who lived in the apartment. It does not tend to establish that R.M. fabricated the story because she wanted Appellant out of the apartment. *See Chavira v. State*, No. 12-03-00108-CR, 2004 WL 1418390, at *3 (Tex. App.–Tyler June 23, 2004, no pet.) (mem. op., not designated for publication) (concluding that "past sexual conduct does no more than show [that the victim] was sexually active" under circumstances in case); *Stephens*, 978 S.W.2d at 734-35 (holding that appellant failed to demonstrate "definite and logical link" between complainant's sexual behavior and alleged motive); *Cooper v. State*, 959 S.W.2d 682, 684-85 (Tex. App.–Austin 1997, pet. ref'd) (holding that evidence of complainant's sexual relations with boyfriend to prove complainant fabricated accusation against defendant to conceal her relationship with boyfriend was not sufficiently connected to her motive to fabricate); *cf. Hammer v. State*, 296 S.W.3d at 568-69 (holding that it was error to exclude evidence that alleged victim, on a prior occasion, falsely accused others of rape to conceal that she had a consensual sexual relationship with her boyfriend, a boy of whom her father did not approve, and thus, her past sexual history was logically connected to her motive to falsely accuse her father);[4] *Yzaguirre v. State*, 938 S.W.2d 127, 128-29 (Tex. App.–Amarillo 1997, pet. ref'd) (holding that testimony of prior sexual conduct should have been admitted because it would have shown that the victim had been in trouble for improper sexual behavior in the past, and, therefore, had a motive to blame someone else).

Moreover, Appellant did not need the excluded evidence to demonstrate R.M.'s motive to fabricate. As detailed above, the trial court allowed Appellant to ask questions that were connected to R.M.'s motive to fabricate.[5] And, finally, the nature of the

---

[3] "Probative value" means more than relevance. *Gigliobianco*, 210 S.W.3d at 642. It refers to how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation. *Id.*

[4] There is no evidence that R.M. made any prior accusations of rape; thus the facts here are distinguishable from the facts in *Hammer*. *See Hammer*, 296 S.W.3d at 565-66.

[5] Furthermore, based on the evidence that the trial court did allow—that R.M. had a twenty-six year old boyfriend who lived in the apartment—the jury might have reasonably inferred that R.M. and her

excluded evidence suggests that it would have a tendency to distract the jury from the main issues in the case and be given undue weight by the jury. Thus, the trial court reasonably could have concluded that the proffered evidence's probative value was substantially outweighed by the danger of unfair prejudice and did not abuse its discretion in excluding the evidence. Appellant's second issue is overruled.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his third and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence to support the verdict.

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

When reviewing the factual sufficiency of the evidence to support a conviction, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009). In conducting a factual sufficiency review, we must discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Although we are authorized to disagree with the jury's determination to a very limited degree, we must nevertheless give

---

boyfriend had a sexual relationship. Such an inference is further supported by the testimony that R.M. told her sister that she thought "her boyfriend . . . had come to the house and was licking her down there."

the jury's verdict a great degree of deference. *Steadman*, 280 S.W.3d at 246. Our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

## Applicable Law

As pertinent here, a person commits indecency with a child by engaging in sexual contact with a child or causing a child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2009). "Sexual contact" means that, with the intent to gratify the sexual desire of any person, 1) a person touches, including through clothing, the anus, breast, or any part of the genitals of a child, or 2) a person uses his anus, breast, or any part of his genitals to touch, including through clothing, any part of a child's body. *Id.* § 21.11(c). A "child" is a person younger than seventeen years of age. *Id.* § 21.11(a). The uncorroborated testimony of a child victim is sufficient to support a conviction for indecency with a child. TEX. CODE CRIM. PROC. ANN. art 38.07(a) (Vernon 2005).

## Discussion

Appellant argues that the State failed to prove that Appellant committed the crime alleged against R.M. More specifically, he argues that the circumstantial proof offered by the State is insufficient to support the logical inference that Appellant was R.M.'s assailant.

R.M. testified that she awoke to someone touching and licking her vagina. She touched the person's head and discovered that he was wearing a do-rag. She testified that Appellant commonly wore a do-rag. Although she could not clearly see the face of her assailant, she saw a "big, dark shadow" trying to hide by squatting next to the edge of her bedpost. She testified that at that point, she knew Appellant was the person touching her. R.M. got out of bed and ran to her mother's room. R.M. testified that Appellant ran past her and jumped into her mother's bed. R.M. testified that Appellant also told her he was sorry and offered to give her one hundred dollars if she did not tell others what happened. R.M. screamed for her mother to awaken, and when she did, R.M.'s mother told Appellant to go downstairs. R.M. and her mother slept in R.M.'s bed for the remainder of the night. R.M. testified that the following morning, Appellant told her that he wanted to "make it up" to her.

9

R.M.'s mother testified that she awoke to her daughter's screaming. She stated that Appellant was standing behind R.M. in the hall and said that he would leave in the morning. Appellant told R.M.'s mother the following morning that he went into the wrong room and wanted to "make it up" to R.M. When R.M.'s mother related this to her, R.M. "got real upset" and called her sister. R.M. told her sister that Appellant molested her, and her sister took her to the police station. According to R.M.'s mother, Appellant later told her that he would give her one thousand dollars if she and R.M. dropped the charges against him. Viewing this evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the verdict.

Appellant points to R.M.'s and her mother's differing versions of the events in question as a conflict that undermines the sufficiency of the verdict. However, matters of credibility and the resolution of conflicts in the evidence are within the sole province of the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Having reviewed the record in its entirety, we have not observed any evidence that causes us to conclude that the proof of guilt is so obviously weak that the jury's determination is clearly wrong or manifestly unjust. Nor can we conclude that the great weight and preponderance of the evidence contradicts the jury's verdict. Therefore, the evidence is also factually sufficient to support the trial court's judgment.

Appellant's third and fourth issues are overruled.


### INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth issue, Appellant alleges that he received ineffective assistance of counsel. Particularly, Appellant complains that his trial counsel stated on the record during the punishment phase that he believed the offense was categorized as a third degree felony when it was actually a second degree felony and rendered Appellant ineligible for probation. Appellant argues that had trial counsel understood the severity of the charges against Appellant, he might have explored a plea bargain instead of proceeding to trial and would have elected that the jury determine his punishment.

### Standard of Review

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 56-57

(Tex. Crim. App. 1986). To prevail on his claim of ineffective assistance, an appellant must show that his attorney's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Tong*, 25 S.W.3d at 712. This court will not second guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.–Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In order to render reasonably effective assistance, an attorney must have a firm command of the facts of the case and the governing law. *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990); *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983). "It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision." *Welborn*, 785 S.W.2d at 393 (citing *Ex parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980)).

**Discussion**

Prior to trial, Appellant moved for the consideration of probation and elected to have punishment assessed by the trial court. After the jury returned its verdict of guilty, the trial court met with the State and Appellant to schedule a sentencing hearing. The State asked that the bond be increased based on the fact that Appellant had been found guilty of a second degree felony offense, which carried a maximum penalty of twenty years of imprisonment. Appellant's trial counsel responded by stating that he believed the State had "mischaracterized the charge" because his understanding was that Appellant

11

was charged with a third degree felony, as opposed to a second degree felony. Trial counsel explained that a notation on his copy of the indictment "categorized [the offense] as a third degree." The trial court reviewed the indictment and confirmed that there was no such notation. The trial court further informed counsel that the offense was correctly charged as a second degree felony, and that since the offense involved indecency with a child, Appellant would be ineligible for probation. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(1)(C) (Vernon 2009).

It is clear from the record that, given the timing of this discussion, Appellant's trial counsel likely prepared for and proceeded to trial under the incorrect belief that Appellant was charged with a third degree felony. A simple review of the indictment, penal code, and the code of criminal procedure would have alerted trial counsel that the charged offense, indecency with a child, was a second degree felony, carrying a two to twenty year prison sentence, and also rendered Appellant ineligible for probation, which trial counsel sought. *See **Tabora v. State***, 14 S.W.3d 332, 336 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (concluding that counsel's representation was deficient because "[i]t is clear from the record that appellant's trial counsel misunderstood either the charges pending against appellant or the applicability of deferred adjudication community supervision" and that "[e]ither misunderstanding could have easily been cleared up by referring to the indictment, penal code, and code of criminal procedure."). Appellant's trial counsel's failure to inform himself of the law applicable to Appellant's case fell below an objective standard of reasonableness. Therefore, Appellant has satisfied the first prong of ***Strickland***.

Our inquiry does not end there, however. We must address the second prong of ***Strickland***: whether Appellant suffered prejudice. In Appellant's brief, he makes the bare assertion that had trial counsel understood the maximum applicable penalty, he would have elected to negotiate a plea bargain and would have elected that the jury, instead of the trial court, determine his punishment. However, we cannot conclude, on the record before us that, but for counsel's failure to inform himself of the applicable law, Appellant would have or could have sought a plea bargain instead of proceeding to trial. Appellant's theory was that R.M. fabricated the offense, and there is no evidence before us that trial counsel would or should have proceeded differently had he known that the offense charged was a second degree felony, as opposed to a third degree felony.

Similarly, there is no evidence in the record that Appellant or his counsel would or should have elected for punishment by the jury as opposed to the trial court had trial counsel known the correct offense level. Therefore, we conclude that Appellant has not satisfied the second prong of the *Strickland* test. Accordingly, Appellant's fifth issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

**<u>JAMES T. WORTHEN</u>**
Chief Justice

Opinion delivered January 29, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)