

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00313-CR

**HOWARD HARRIS, JR.,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

---

**From the 85th District Court
Brazos County, Texas
Trial Court No. 12-02272-CRF-85**

---

## MEMORANDUM OPINION

---

A jury found Appellant Howard Harris, Jr. guilty on two counts of aggravated sexual assault of a child. Because the jury found as true the enhancement paragraph alleging a prior conviction of aggravated sexual assault of a child, Harris received an automatic life sentence on each count. *See* TEX. PENAL CODE ANN. § 12.42(c)(2), (g)(1). Asserting two issues, Harris appeals. We will affirm.

We begin with Harris's second issue, which asserts that the evidence is insufficient. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

In August of 2011, M., the victim, was age 15, and she made an outcry of sexual abuse by Harris, her uncle, that allegedly occurred approximately three years before her outcry. At the time of trial, M. was age 17. She said that when she was around age 12, she spent a lot of time with her younger cousin K.H. and Harris.

M. testified that the first incident happened at the time of a large family gathering at another uncle's house with several other children, aunts, and uncles in the summer of 2008. She said that, at the time of the incident, she was alone in the living room and asleep on the couch. The other children were in the bedroom, and the adults were outside. Harris came inside, woke her up, and told her that when he returned, he wanted her to be naked. Harris went outside but soon came back in and locked the door. He asked M. why she was not naked, and when she did not respond, he took her

near the kitchen, pulled her pants down, and began to have intercourse with her. It was not long before someone knocked on the door, and Harris then ran to the bathroom. M. unlocked the door and one of her aunts was there. M. then returned to the couch, and she was too scared to tell her aunt what had just happened.

M. said that, on another occasion that summer, she and her cousin K.H. went to the apartment of Meca, Harris's girlfriend, to do laundry. M. and K.H. were in Meca's bedroom watching television. Later that night, when the power went out, Harris got in bed between M. and K.H., and after K.H. went to sleep, Harris woke up M. and told her to come to the living room with him. M. said that she followed him and sat on the couch. Harris then told her not to tell anyone about their relationship because it would hurt his relationship with his brother, M.'s father. M. testified that Harris then pulled down his pants and asked her to perform oral sex, which M. did and then returned to the bedroom. Harris told her that he would kill her if she ever told anyone.

M.'s mother testified that in 2011, she took M. to the doctor for her annual checkup. After her checkup, M. started crying and told her mother that Harris had "messed" with her. M.'s mother then contacted the police. Detective Chris Loup of the Bryan Police Department was assigned the case, and he arranged for M. to be interviewed at the child advocacy center.

Harris argues that the evidence is insufficient because there was no physical evidence and because M.'s trial testimony differed in some respects from what she had said in her interview at the child advocacy center. Harris asserts that M. testified that when Harris first approached her, she was on the couch, but in the interview she said

that they were in the bathroom. At trial, she said that Harris made a second advance at her on the first occasion after her aunt had left, but she did not mention that in the interview. And lastly, he asserts that in the interview, M. said that her grandmother picked her up from Meca's apartment the next day, but at trial she said that her aunt picked her up.

An aggravated sexual assault conviction may rest solely on the testimony of a child victim. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014) (requirement that victim inform another person within one year does not apply to person under 17 at time of offense); s*ee Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Abbott v. State,* 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet ref'd). Moreover, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). By finding Harris guilty, the jury obviously believed the victim's testimony. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Harris committed the offenses of aggravated sexual assault of a child beyond a reasonable doubt. We overrule the second issue.

In his first issue, Harris contends that the trial court abused its discretion by excluding evidence that M. was diagnosed with a sexually transmitted disease and made her outcry immediately after the diagnosis and that there were discrepancies about M.'s history of sexual partners. Harris asserts that, from M.'s medical records, before M.'s chlamydia diagnosis, she told the nurse practitioner that she had had one sexual partner in the last six months, that she had had three total partners, and that she had never had sex with anyone who had ever been in prison or jail. Harris claims that after the chlamydia diagnosis a week later, M. made her outcry and also changed her story in her interview at the child advocacy center, saying there that she had had only two partners and that one was Harris, who had previously been in prison.

Harris contends that this evidence was admissible under Rule of Evidence 412(b)(2)(C), which provides:

> (b) Evidence of Specific Instances. In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
>
> ….
>
>     (2) it is evidence: … (C) that relates to the motive or bias of the alleged victim; …

TEX. R. EVID. 412(b)(2)(C).

Harris's theory is that, because M. did not want her mother and family to know that she had had a recent sexual partner, M. had a motive to place blame on Harris for her chlamydia diagnosis. According to Harris, M. allegedly knew that Harris had a

sexually transmitted disease,[1] and to protect herself from punishment for her sexual activity and chlamydia diagnosis, M. fabricated her allegations against him.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State,* 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

First, we agree with the State that M.'s alleged inconsistent statements about the number of her sexual partners is not evidence of "specific instances" of sexual behavior that would implicate Rule 412. Moreover, M. did not testify about her sexual history, so the prior alleged inconsistent statements would not even be admissible under Rule 613. The trial court therefore did not abuse its discretion in excluding evidence of M.'s alleged inconsistent statements about the number of her sexual partners.

Second, regarding the exclusion of evidence of M.'s chlamydia diagnosis that she received just before making her outcry, we will assume without deciding that evidence of M.'s chlamydia diagnosis *could* be evidence of a specific instance of her past sexual behavior.[2]

Rule 412 creates "an extremely high hurdle" for the admissibility of evidence of specific instances of an alleged victim's past sexual behavior. *Todd v. State,* 242 S.W.3d 126, 129 (Tex. App.—Texarkana 2007, pet. ref'd). In addition to meeting the rule's

---

[1] In arguing for admissibility, Harris asserted to the trial court that he was diagnosed with herpes in 2007 and that "everyone" in the family knew that he had a sexually transmitted disease.

[2] Harris did not introduce or proffer evidence that chlamydia is transmitted only sexually, nor did he introduce or proffer evidence that he did not have chlamydia at the time of the alleged assaults.

requirements, the proposed evidence must demonstrate a "definite and logical link" between the victim's past sexual behavior and the alleged motive or bias. *See id.; Stephens v. State*, 978 S.W.2d 728, 734-35 (Tex. App.—Austin 1998, pet. ref'd).

In this case, we agree with the State's argument that Harris's theory for the admissibility of M.'s chlamydia diagnosis is merely speculative. First, other than his attorney's argument to the trial court during the offer of proof, there is no record evidence that M. knew that Harris had a sexually transmitted disease such that she could place blame on him for her chlamydia diagnosis three years after he allegedly sexually assaulted her.

Next, there is no evidence that M. was seeking to hide her sexual activity from her parents and family, no evidence that M.'s parents were unaware that she was sexually active, and no evidence that her parents would punish her for being sexually active and contracting chlamydia. Finally, and perhaps most importantly, there is no evidence that M. blamed Harris for her contraction of chlamydia. Harris's theory that M. fabricated her sexual assault allegations against him to explain her contraction of chlamydia is merely speculative; there is no evidence to support it, much less a "definite and logical link" to support its admissibility. *See Stephens,* 978 S.W.2d at 734-35; *Cooper v. State,* 959 S.W.2d 682, 684 (Tex. App.—Austin 1997, pet. ref'd); *see also Nevelow v. State*, No. 14-10-00332-CR, 2011 WL 2899377, at *6 & n.4 (Tex. App.—Houston [14th Dist.] July 21, 2011, pet. ref'd) (mem. op., not designated for publication). The trial court did not abuse its discretion in excluding the evidence of M.'s chlamydia diagnosis. We overrule issue one.

The trial court's judgment is affirmed.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 11, 2014
Do not publish
[CRPM]

